EXHIBIT B

Case 1:05-cv-00586-GMS     Document 52-3     Filed 02/24/2006     Page 1 of 9

# ■FOLEY

FOLEY & LARDNER LLP
ATTORNEYS AT LAW

WASHINGTON HARBOUR
3000 K STREET, N.W., SUITE 500
WASHINGTON, D.C. 20007-5143
202.672.5300 TEL
202.672.5399 FAX
www.foley.com

WRITER'S DIRECT LINE
202.295.4057
ason@foley.com EMAIL

CLIENT/MATTER NUMBER
054657 0103

February 17, 2006

**VIA FACSIMILE**

Preston K. Ratliff, Esq.
Fitzpatrick, Cella, Harper & Scinto
30 Rockefeller Plaza
New York, NY 10112-3801

    Re:    Biovail v. Andrx Pharmaceuticals LLC et al.,
            Civil Action No. 1:05-cv-586

Dear Mr. Ratliff:

       We write in response to your February 13, 2006 letter to Steve Maddox regarding Andrx's interrogatory responses and document production. Your mischaracterization of Andrx's statements and positions is unnecessary and unproductive. *First*, your statement that "Andrx's assertion that on the eve of the January 26, 2006 discovery conference, Biovail 'ginned up' discovery complaints in an attempt to deflect attention from an alleged refusal to produce discovery to Andrx is nonsensical as Biovail never even raised its discovery complaints with the Court" is false and inconsistent with the transcript from the January 26, 2006 conference. For example, the Court stated:

> THE COURT: Okay. Now help me out with the timing here, too, because your opponent [Andrx] makes the assertion that this is a ginned-up position for you to take in this call. That in the months since they propounded this answer you didn't say boo about it being a problem until the prospect of dealing with the Court on this call came up and then that is when you decided: Well, wait a second, their answer is inadequate and therefore we don't have to answer. I want to give you a chance to go ahead and answer that.

(Transcript of Jan. 26, 2006 hearing ("Transcript"), p. 9, ln. 22 – p. 10, ln. 5).

BOSTON          JACKSONVILLE    NEW YORK        SAN DIEGO/DEL MAR    TAMPA
BRUSSELS        LOS ANGELES     ORLANDO         SAN FRANCISCO        TOKYO
CHICAGO         MADISON         SACRAMENTO      SILICON VALLEY       WASHINGTON, D.C.
DETROIT         MILWAUKEE       SAN DIEGO       TALLAHASSEE          WEST PALM BEACH

# ▪FOLEY

Preston K. Ratliff, III, Esq.
February 17, 2006
Page 2

In responding to the Court's inquiry, Mr. O'Malley raised its discovery complaints and argued why it believes Andrx's responses are deficient. (Transcript, p. 10, ln. 6 – p. 11, ln. 11. Notably absent from Mr. O'Malley's response is any indication that Biovail was not at that time raising its discovery complaints with the Court. We request that you refrain from making such false accusations in the future.

*Second,* your allegation that "Andrx ignored Biovail's proposal to exchange supplemental interrogatory responses" is also false. We responded to Biovail's proposal in our February 2, 2006 letter when we informed you that Biovail does not have the right to "dictate conditions upon which it will produce discovery, nor does it have the right to dictate the conditions upon which it will obey the Court's instructions." Interestingly, although Biovail indicated that it was prepared to provide supplemental responses by Monday February 13, 2006 (*see* February 1, 2006 letter from Preston Ratliff), we have not received Biovail's supplemental responses. It appears that although Biovail was ready to provide Andrx with supplemental responses interrogatories on February 13, 2006, it intends to hold those responses hostage until it can extract concessions from Andrx that it is not entitled to receive.

Biovail's continuing refusal to provide its supplemental responses to interrogatories is a direct violation of the Court's instructions and contrary to law. Indeed, as the Court stated:

> But what the law doesn't provide is for you [Biovail] to turn to essentially self-help by saying, you know what, we really don't like your answer so we're not giving you anything that you are asking for in this regard until we like your answer more.

(Transcript p. 11, ln. 21-25).

Further, it is well established that Biovail's conditions upon which it will produce discovery is directly inconsistent with the Federal Rules of Civil Procedure and, thus, has been consistently rejected by courts as utterly baseless and improper. *See* Fed. R. Civ. P. 26(d); *Convolve, Inc. v. Compaq Computer Corp.*, 00 Civ. 5141 (JSM), 2000 WL 1480363, at *1 (S.D.N.Y. Oct. 6, 2000) ("As Rule 26(d), Fed. R. Civ. P. states, 'methods of discovery may be used in any sequence, and the fact that a party is conducting discovery, whether by deposition or otherwise, shall not operate to delay any other party's discovery.' Under the Federal Rules' liberal discovery regime, without judicial intervention *a party can neither assert priority in discovery nor make its responses to another party's discovery requests contingent upon reciprocal compliance.*" (citing *Burda Media, Inc. v. Blumenberg*, 97 Civ. 7167, 1999 WL 413469, at *5 (S.D.N.Y. June 21, 1999)) (emphasis supplied).

In light of the well-established law on this issue, Biovail's violation of the Court's instructions, and continuing refusal to provide discovery despite the fact that Biovail was prepared to exchange supplemental responses by February 13, 2006, Andrx reserves the right to seek all appropriate relief from the Court, including sanctions for Biovail's discovery misconduct.

# ▪FOLEY

Preston K. Ratliff, III, Esq.
February 17, 2006
Page 3

With respect to the other issues raised in your letter, we address each item in the order in which they were presented:

### I.  Andrx's Interrogatory Responses

We understand your reference to Interrogatory No. 1 in your February 13, 2006 letter is based only on the fact that Andrx's response to Interrogatory No. 2 incorporated by reference the invalidity portions in its response to Interrogatory No. 1. Please let us know immediately if our understanding is incorrect because Biovail has not previously raised any complaints regarding Andrx's response to Interrogatory No. 1 with respect to its non-infringement contentions.

Your citation to "hornbook patent law" as the "authority" supporting the level of detail that Biovail seeks and listing what it believes are the elements for the anticipation and obviousness defenses ignores our simple request for Biovail to provide authority for the level of detail you seek *at this stage in the case*. Indeed, as we previously indicated to you, the Court already reviewed our response to Interrogatory No. 2 and determined that it was sufficient *for this stage of the case*. (Transcript p. 12, ln. 5 – 11). Although Andrx's responses are sufficient for this stage of the case, Andrx will continue to comply with the Court's instructions and the Fed. R. Civ. P. 26(e) and supplement its discovery responses, at the appropriate time as additional information becomes available.

Subject to Andrx's objections, it is our understanding that there are no "opinion, study, analysis, report, test, or investigation requested, obtained, and/or conducted by Andrx relating to the infringement or validity of the '791 patent" other than those prepared by counsel, which we have already identified. The opinion of counsel obtained by Andrx relating to the patent-in-suit is obviously privileged and Andrx has not waived the privilege. We note that you have not explained how any of the information Biovail seeks related to the opinion of counsel is relevant to any of the issues in this action in light of the fact that willful infringement is not an issue in this action.

### II.  Andrx's Document Production

Andrx has made a reasonably diligent search for responsive documents and, subject to its objections, has already produce all relevant, non-privileged documents responsive to Biovail's requests. Indeed, we note that Andrx has produced over 5 times more pages of documents than Biovail. Nevertheless, we will make another search for (1) reports regarding the development of the formulation of its proposed tableted products, (2) batch records for extended-release pellet lots ▇▇▇, ▇▇▇, ▇▇▇, ▇▇▇, and ▇▇▇, (3) manufacturing records for the 420 mg. tablet lots ▇▇▇, ▇▇▇ and for the samples provided on December 30, 2005, and Andrx will produce all relevant, non-privileged documents, if any, to the extent not already produced.    REDACTED

We agree that both parties shall produce supplemental FDA correspondence (Biovail's NDA No. 21-392 and Andrx's ANDA No. 77-686) every two months.

# ▪FOLEY

Preston K. Ratliff, III, Esq.
February 17, 2006
Page 4

      Andrx has agreed to provide Biovail with all FDA correspondence concerning its ANDA No. 77-686. Indeed, Andrx has already produced those documents to Biovail and will continue to do so pursuant to the parties' agreement to periodically produce supplement FDA correspondence. While the FDA documents concerning Andrx's ANDA No. 77-686 may be relevant to the subject matter of this action, the FDA Form 483 letter concerning manufacturing facilities of Andrx's existing, approved products, is not. Indeed, it is undisputed that Andrx's approved products are not at issue in this litigation. Further, the fact that the "beads" employed in Andrx's proposed unapproved product may be identical in composition to beads in other products not at issue in this litigation does not render all documents related to the approved product not at issue in this action relevant to this litigation. Nevertheless, should the FDA require Andrx to change its manufacturing procedures for its proposed unapproved product, we anticipate that those changes would be reflected in the correspondence with the FDA related to ANDA No. 77-686, which we already stated will be produced.

      The only product at issue is the proposed product that is the subject of Andrx's ANDA. The technical documentation concerning that product, including the raw materials, are in the ANDA. Accordingly, Andrx already produced the technical documentation, including the raw materials, related to the sole product at issue. (*See, e.g.*, Section VIII of the ANDA). To the extent that Biovail is seeking technical documentation for products that are not the subject matter of the ANDA, we fail to see the relevance of such technical documentation to the issues in this action.

      There has been no failure by Andrx to produce documents regarding its notice letters, organizational charts or document retention, disposal or destruction policies. To the best of our knowledge, after a reasonably diligent search, there are no responsive, non-privileged documents regarding these categories in Andrx's possession, custody or control. Our investigation and discovery is continuing and should we locate any responsive, non-privileged documents, if any, they will be provided.

      Although you accuse Andrx for failing to address each of the missing documents identified in Biovail's January 24, 2006 letter, you do not identify any documents that Andrx failed to address. Instead, you improperly shift the burden of identifying documents that Andrx allegedly failed to address to Andrx. We are not clairvoyant and thus cannot determine what you think is missing from our February 3, 2006 letter. Further, it is not our burden to compare the two letters and determine what discovery complaints you think Andrx "failed" to address. If you truly believe that we have not addressed all of the issues raised in your January 24, 2006 letter, identify those issues for us and we will respond, as appropriate.

      Finally, your threat that Andrx either provide the requested discovery or Biovail will raise "Andrx's discovery failures" with the Court is an ultimatum and not a good faith effort to meet and confer. Although it does not appear that Biovail is genuinely interested in engaging in a good faith meet and confer to resolve its discovery complaints, we are nevertheless available for a meet and confer. Let me know if Biovail would like to meet and confer or if this is another ploy to deflect attention from its discovery misconduct and refusal to produce discovery.

# ▪FOLEY

Preston K. Ratliff, III, Esq.
February 17, 2006
Page 5

      Concerning your statement that Biovail will raise Andrx's discovery failures with the Court during the February 28, 2006 conference, has Biovail already contacted the Court and scheduled a conference on its discovery complaints for that date? If not, we object to Biovail's attempt to use the time Andrx reserved with the Court to raise its own discovery complaints. As you know, the Court's time is very limited and we refuse to be prejudiced by Biovail's continuous attempts to delay resolution of its discovery misconduct and the issues that the Court did not have the time to address during the January 26, 2006 conference. If a discovery conference becomes necessary to address Biovail's discovery complaints against Andrx, it can request its own dates from the Court.

Sincerely,

Anthony H. Son

cc:   Jack Blumenfeld
      Richard Horwitz
      Martin Endres

# EXHIBIT C

Thursday, January 26, 2006

SHEET 1

                                                                    1

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                IN AND FOR THE DISTRICT OF DELAWARE

 3                           - - -

 4    BIOVAIL LABORATORIES          :     CIVIL ACTION
      INTERNATIONAL SRL, a          :
 5    corporation of Barbados,      :
                                    :
 6              Plaintiff,          :
                                    :
 7         v                        :
                                    :
 8    ANDRX PHARMACEUTICALS, LLC and:
      ANDRX CORPORATION,            :
 9                                  :
                Defendants.         :     NO. 05-586 (KAJ)
10
                             - - -
11
                        Wilmington, Delaware
12           Thursday, January 26, 2006 at 2:00 p.m.
                      TELEPHONE CONFERENCE
13
                             - - -
14
      BEFORE:    HONORABLE KENT A. JORDAN, U.S.D.C.J.
15
                             - - -
16    APPEARANCES:

17
                 MORRIS NICHOLS ARSHT & TUNNELL
18               BY:  JACK B. BLUMENFELD, ESQ.

19                    and

20               FITZPATRICK CELLA HARPER & SCINTO
                 BY:  JOSEPH M. O'MALLEY, JR., ESQ., and
21                    PRESTON K. RATLIFF, II, ESQ.
                      (New York, New York)
22
                           Counsel for Plaintiff
23

24
                                        Brian P. Gaffigan
25                                      Registered Merit Reporter
```

10

1  you didn't say boo about it being a problem until the
2  prospect of dealing with the Court on this call came up and
3  then that is when you decided: Well, wait a second, their
4  answer is inadequate and therefore we don't have to answer.
5  I want to give you a chance to go ahead and answer that.
6      MR. O'MALLEY: Well, first of all, Your Honor,
7  his statement that he only got our complaint about the
8  interrogatory is simply not true. And Exhibit B to our
9  paper to our local counsel's paper is a January 11th letter
10 where we began to complain about their interrogatory
11 response, so it was well before the yesterday.
12     In fact, their responses were only served on
13 January 3rd. So in bringing this dispute, we're trying not
14 to bring it to your attention prematurely. We would like
15 them to answer, compare the claims to the prior art so that
16 we can see if there is a legitimate obviousness defense.
17 They've pled in their answer defenses like Section 112
18 indefiniteness and enablement which they seem to have
19 jettisoned. So simply seeing it in the answer we don't
20 think is sufficient to invoke the pretty onerous production
21 of sensitive information that they want. If we believe, if
22 we see a legitimate obviousness defense in this case, we
23 will likely take this issue off your table.
24     THE COURT: Well, what would --
25     MR. MADDOX: Your Honor.

11

1      THE COURT: No, wait a minute, Mr. Maddox.
2      Mr. O'Malley, what would constitute a
3  "legitimate" obviousness defense to you? What is it that
4  you think they are obligated to do before you are obligated
5  to answer discovery?
6      MR. O'MALLEY: Identify which claims you believe
7  are obvious, compare those claims to the publication. And
8  with respect to any differences between the prior art and
9  the claims, identify why you believe those differences
10 would be obvious to one of ordinary skill at the time of
11 invention.
12     THE COURT: Okay. Well, we're going to shorten
13 this up because I think you're taking an unrealistic
14 position, one that is not supported by the law. It's true
15 that if you can come forward in essence with a motion for
16 protective order and say, hey, this discovery request is
17 just not justified, all they have done is mouth some words
18 about we have this reason to believe it's not a well founded
19 issue and it's onerous, et cetera, et cetera. Then, you
20 know, I could hear that and see maybe you had a point.
21     But what the law doesn't provide is for you
22 to turn to essentially self-help by saying, you know what,
23 we really don't like your answer so we're not giving you
24 anything that you are asking for in this regard until
25 we like your answer more. That sets up an untenable

12

1  relationship and working dynamic because pretty soon both
2  sides have decided that they're the judges in the case and
3  they're not going to give anything to the other side until
4  they're satisfied. That will break down pretty quickly.
5      So I've taken a look at what their answer was.
6  It's certainly not going to be enough to pass muster at
7  trial, I'll warrant you that. But we're not at trial.
8  We're at the point now where each side is discovering what
9  the other side's position is and, they've told you enough
10 for you to say at this juncture, okay, I'm going to have to
11 answer their interrogatories about secondary considerations.
12     Now, what I say about that, I also mean to say
13 with respect to contention interrogatories, and it goes
14 both ways. If you think that you are entitled to get some
15 more information about the contention interrogatories you've
16 posed, you go ahead and push for it. And the other side,
17 Mr. Maddox, you better start being forthcoming. And I
18 expect, Mr. O'Malley, your side will be forthcoming when it
19 comes to discussing what you know about the legal positions
20 you have already taken. In short, we're not going to play
21 the fan dance with superimposed over the top of it: No,
22 no, you first. No, you first. No, you first. You guys
23 just give your discovery and give it now and you have the
24 opportunity to supplement and amend and change things as
25 necessary as further facts come to light and your experts

13

1  further enlighten your work.
2      But there is a reason that I put in my orders
3  that I encourage contention interrogatories early in the
4  case. It's because I want to avoid exactly this kind of
5  phone call. And so I'll direct you both in light of what
6  I'm instructing you to please move forward and give
7  responsive discovery to the properly propounded contention
8  interrogatories you each have in front of each other.
9      Now, I hope that is helpful because that's
10 probably all the time we're going to have to deal with this
11 specific issue. But, Mr. O'Malley, do you understand what
12 I'm trying to get at, sir?
13     MR. O'MALLEY: Yes, Your Honor.
14     THE COURT: Mr. Maddox, do you understand, sir?
15     MR. MADDOX: Yes, Your Honor.
16     THE COURT: Okay. Because I'm asking for sort
17 of a change of approach out of both of you in this regard,
18 since you both evidently feel the other has been inadequate
19 in dealing with contention interrogatories.
20     Now, let's turn to the issue of the motion to
21 consolidate, which according to Andrx who brought the motion
22 involves two separate actions filed by Biovail within two
23 and-a-half months of each other alleging infringement of
24 the same patents by the same defendants based on the same
25 proposed drug products and yet Biovail opposes