# EXHIBIT A

1

| | |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
| 2 | IN AND FOR THE DISTRICT OF DELAWARE |
| 3 | - - - |

```
 4   BIOVAIL LABORATORIES        :    CIVIL ACTION
     INTERNATIONAL SRL, a         :
 5   corporation of Barbados,     :
                                  :
 6              Plaintiff,        :
                                  :
 7         v                      :
                                  :
 8   ANDRX PHARMACEUTICALS, LLC and :
     ANDRX CORPORATION,           :
 9                                :
                Defendants.       :    NO. 05-586 (GMS)
10                    - - -
11
                     Wilmington, Delaware
12            Friday, February 9, 2007 at 9:17 a.m.
                     TELEPHONE CONFERENCE
13                    - - -
14
     BEFORE:       HONORABLE GREGORY M. SLEET, U.S.D.C.J.
15                    - - -
16   APPEARANCES:
17
                 MORRIS NICHOLS ARSHT & TUNNELL
18               BY:  JACK B. BLUMENFELD, ESQ., and
                      KAREN JACOBS LOUDEN, ESQ.
19
                      and
20
                 PAUL HASTINGS
21               BY:  JOE M. O'MALLEY, JR., ESQ., and
                      PRESTON K. RATLIFF, II, ESQ.
22                    (New York, New York)
23                    Counsel for Plaintiff
24
                             Brian P. Gaffigan
25                           Registered Merit Reporter
```

2

```
 1    APPEARANCES: (Continued)

 2
                   POTTER ANDERSON & CORROON, LLP
 3                 BY:  RICHARD L HORWITZ, ESQ.

 4                     and

 5                 FOLEY & LARDNER
                   BY:   STEVEN A. MADDOX, ESQ.
 6                      (Washington, District of Columbia)

 7                     Counsel for Defendants

 8

 9                     - oOo -

10                 P R O C E E D I N G S

11                 (REPORTER'S NOTE:  The following telephone

12    conference was held in chambers, beginning at 9:17 a.m.)

13                 THE COURT:  Good morning, counsel.  Counsel, who

14    is on the line today for the plaintiff?

15                 MR. BLUMENFELD:  Good morning, Your Honor.  It's

16    Jack Blumenfeld and Karen Jacobs Louden, locally, and Joe

17    O'Malley and Preston Ratliff from Paul Hastings.

18                 THE COURT:  Good morning.

19                 MR. O'MALLEY:  Good morning, Your Honor.

20                 MR. RATLIFF:  Good morning, Your Honor.

21                 THE COURT:  And for Andrx?

22                 MR. GAUDET:  Good morning, Your Honor.  It's

23    Rich Horwitz at Potter Anderson; and Steve Maddox from Foley

24    & Lardner is on with me.

25                 THE COURT:  Good morning.
```

```
 1    administrator on one thing, counsel.  I'm going to mute you
 2    for a moment, okay?
 3              (Pause.)
 4              THE COURT:  I'm back, counsel.  Counsel, my
 5    inclination is to, if I haven't already, and I'll accept for
 6    purposes of discussion that I haven't exactly done that,
 7    set October 9th as the trial date.  That is the date we're
 8    going to bring this matter to trial.  Should it come to
 9    pass that because of difficulty in scheduling depositions
10    occurs during the summer and that causes an inability to
11    incorporate certain aspects of the expert case into the
12    pretrial order, I would be inclined to grant leave to
13    supplement the submissions, the pretrial submissions
14    and supplement the order in order to accommodate that
15    possibility.  Would that be helpful from plaintiff's point
16    of view?
17              MR. O'MALLEY:  Yes, I think quite possibly that
18    would be helpful.  Thank you, Your Honor.
19              THE COURT:  Okay.  Then I believe the way we
20    left it, correct me if I'm wrong, was that I didn't order
21    the actual submission of a schedule pending the discussions
22    that you have now, had; is that correct?  In other words, I
23    don't think there is anything that has been filed on the
24    docket, is there?
25              MR. MADDOX:  Your Honor, this is Mr. Maddox.
```

1   I believe you asked us to, if we agreed, to submit a

2   scheduling order.  And so we have not.  Because there was

3   a disagreement about the trial date, we have not submitted

4   one.

5           THE COURT:  Okay.  Go ahead.

6           MR. MADDOX:  I would think at this point, we

7   could agree in light of your ruling right now, but I don't

8   speak for Mr. O'Malley, of course.

9           THE COURT:  I would imagine, Mr. O'Malley, you

10  would agree with that.

11          MR. O'MALLEY:  Yes, Your Honor.  Now that we

12  have a trial date, I think the rest of the dates will fall

13  into place.

14          THE COURT:  Okay.  So if you could get that by

15  next Friday filed after circulation, I'd appreciate that.

16          MR. MADDOX:  Your Honor?

17          THE COURT:  All right.  Yes?

18          MR. MADDOX:  Yes, this is Mr. Maddox.  There is

19  one other topic, not to seek resolution so much as guidance

20  as to how would like us to go about trying to resolve it.

21          THE COURT:  Yes.

22          MR. MADDOX:  It concerns two depositions that

23  Andrx seeks to take.

24          THE COURT:  Yes, I saw mention of that in a

25  letter.

# EXHIBIT B

03/07/2007 10:48 FAX 2123194090          PAUL HASTINGS                    ☒002/004

# Paul Hastings
**ATTORNEYS**

Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street • New York, NY 10022
telephone 212 318 6000 • facsimile 212 319 4090 • www.  uthastings.com

Atlanta
Beijing
Brussels
Chicago
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Stamford
Tokyo
Washington, DC

(212) 318-6055
prestonratliff@paulhastings.com

March 7, 2007

**VIA FACSIMILE AND FIRST-CLASS MAIL**

Steven A. Maddox, Esq.
Foley & Lardner LLP
3000 K Street, N.W.
Suite 500
Washington, D.C. 2007-5143

Re:    *Biovail v. Andrx Pharmaceuticals LLC, et al.*
       *Civil Action No. 1:05-cv-586 (GMS)*

Dear Steve:

Enclosed is a supplement to Dr. Brenner's expert report.

Very truly yours,

Preston K. Ratliff II

cc:    <u>Via Facsimile</u>

       Jack B. Blumenfeld, Esq.
       Richard L. Horwitz, Esq.
       Martin P. Endres, Esq.

03/07/2007 10:48 FAX  2123194090          PAUL HASTINGS                    ☑003/004

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BIOVAIL LABORATORIES INTERNATIONAL SRL, a corporation of Barbados, <br><br> Plaintiff, <br><br> v. <br><br> ANDRX PHARMACEUTICALS, LLC and ANDRX CORPORATION, <br><br> Defendants. | ) <br> ) <br> ) <br> ) C.A. Nos.   05-586 (GMS) <br> )                    05-730 (GMS) <br> )                    06-620 (GMS) <br> ) (CONSOLIDATED) <br> ) <br> ) <br> ) <br> ) <br> ) |

## SUPPLEMENT TO THE EXPERT REPORT OF
## GERALD S. BRENNER , Ph.D., REGARDING
## ANDRX'S INFRINGEMENT OF THE '791 PATENT

### CONTAINS CONFIDENTIAL INFORMATION
### SUBJECT TO PROTECTIVE ORDER

I hereby supplement paragraphs 8 and 9 of my July 7, 2006 expert report as follows:

8.      The objectives of this report are to provide and explain my opinion that Andrx's proposed generic versions of Cardizem LA infringe the '791 patent.  In addition, my opinion regarding the many differences between Andrx's proposed tablet products and Andrx's prior generic Tiazac capsule products is set forth in my January 19, 2007 declaration submitted in response to Andrx's Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 5,529,791 and in support of Biovail's Cross-Motion for Summary Judgment of No Collateral Estoppel.  My January 19, 2007 declaration is incorporated herein by reference in its entirety.

9.      In providing my explanations, interpretations, and opinions expressed here, I have considered a large number of documents and materials, including Dr. Martyn C. Davies's report on testing and analysis of Andrx's proposed tablet products, which are discussed in this report, my January 19, 2007 declaration and/or identified in Tab B.


MARCH 6 2007
_____
Dated

~~Gerald S. Brenner Ph.D.~~ (signature)
Gerald S. Brenner, Ph.D.

# EXHIBIT C

LEXSEE



Caution
As of: Apr 11, 2007

IN RE: SAFEGUARD SCIENTIFICS

CIVIL ACTION 01-3208

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

2004 U.S. Dist. LEXIS 23494

November 17, 2004, Decided

**SUBSEQUENT HISTORY:** Summary judgment granted by In re Safeguard Scientifics, 2004 U.S. Dist. LEXIS 23796 (E.D. Pa., Nov. 18, 2004)

**PRIOR HISTORY:** In re Safeguard Scientifics, 220 F.R.D. 43, 2004 U.S. Dist. LEXIS 2393 (E.D. Pa., 2004)

**DISPOSITION:** Defendants' motion to strike and preclude testimony of plaintiffs' expert as presented in affidavit filed August 30, 2004 granted in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, investors, sued defendants, a corporation and its officers, and alleged violations of S.E.C. Rule 10b-5. The corporation and its officers moved for summary judgment. The investors' response to the motion was accompanied by a supporting declaration by their expert. The corporation and the officers moved to strike the declaration as untimely.

**OVERVIEW:** The corporation and its officers alleged that the expert's declaration was an improper expert report filed in violation of the court's scheduling order. The court found that the expert's declaration did not qualify as a rebuttal or supplemental report under Fed. R. Civ. P. 26 but was instead governed by Fed. R. Civ. P. 56(e) since the expert's declaration, filed as an

accompaniment to the investors' memorandum of law in opposition to the motion for summary judgment, fell within the basic description of a Fed. R. Civ. P. 56(e) opposing affidavit and was timely filed. Thus, the expert declaration did not run afoul of the court's scheduling order and could not be stricken under Fed. R. Civ. P. 37(b)(2)(B) on those grounds. Because the preliminary report did not include a statement of the expert's opinion regarding causation in the market manipulation context, and because evidence of related calculations or analyses was presented for the first time in the expert's declaration, the investors failed to comply with expert witness disclosure requirements under Fed. R. Civ. P. 26(a)(2)(B), and thus preclusion of such evidence under Fed. R. Civ. P. 37(c)(1) was appropriate.

**OUTCOME:** The corporation and the officers' motion to strike was granted only with respect to the expert's opinion regarding causation in the market manipulation context. The expert was precluded from presenting expert testimony regarding his opinions on loss causation in the context of the investors' market manipulation claim inasmuch as those opinions were not contained in his preliminary report or his supplemental report.

**CORE TERMS:** disclosure, causation, manipulation, calculation, stock prices, expert report, deposition, stock, summary judgment, stock price, causal, contradict, discovery, trading, opposing affidavit, omission, stricken,

prior testimony, deadline, rebuttal, move to strike, addressing, analyses, expert testimony, opposing, dropped, drop, supplemental report, timely filed, scheduling

## LexisNexis(R) Headnotes

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Summary Judgment > Hearings > General Overview*
*Civil Procedure > Summary Judgment > Supporting Materials > Affidavits*
[HN1] Parties are required to disclose the identity of potential expert witnesses, accompanied by a written expert report containing a complete statement of all opinions to be expressed and the basis and reasons therefor and the data or other information considered by the witness in forming the opinions, within the time frames set out in Fed. R. Civ. P. 26. Fed. R. Civ. P. 26(a)(2)(B). Where additional relevant information becomes available such the initial expert report is rendered incomplete or incorrect, a party is obligated to supplement or correct the initial disclosure by filing a supplemental report before the deadline for pretrial disclosures. Fed. R. Civ. P. 26(e). If the court's scheduling order provides for rebuttal reports, a party may also submit an expert report to contradict or rebut evidence identified by the opposing party within the deadlines set by the court. Fed. R. Civ. P. 26(a)(2)(C). Finally, a party opposing a motion for summary judgment may serve opposing affidavits, including sworn statements by potential expert witnesses, at any point prior to the date of the hearing. Fed. R. Civ. P. 56(c), (e).

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Misconduct*
[HN2] Fed. R. Civ. P. 37 provides for exclusionary sanctions where parties fail to comply with Fed. R. Civ. P. 26 discovery requirements. With respect to timeliness, a court may prohibit a party from introducing matters in evidence where the party has failed to obey a scheduling order entered under Fed. R. Civ. P. 26(f). Fed. R. Civ. P. 37(b)(2)(B). With respect to the substance of discovery

disclosures, a party will not ordinarily be permitted to use information at trial or on a motion if the information should have been disclosed pursuant to Fed. R. Civ. P. 26(a), and the party offers no substantial justification for failing to do so. Fed. R. Civ. P. 37(c)(1); Fed. R. Civ. P. 26 advisory committee's note on 1993 amendments. Thus, if an expert's initial report does not include a complete statement of opinions to be expressed and the basis for those opinions, a court may prohibit the expert from later testifying on issues or opinions not addressed in the initial report.

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Misconduct*
[HN3] Given that exclusionary sanctions under Fed. R. Civ. P. 37 are extreme in nature, a court may not impose them unless it first finds that the party: (1) revealed previously undisclosed evidence when trial was either imminent or in progress; or (2) acted in bad faith, which is more than a mere lack of diligence. When making those determinations, a court should consider: (1) the prejudice or surprise of the party against whom the excluded evidence would have been offered; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of Fed. R. Civ. P. 37 sanctions would disrupt the orderly and efficient trial of the case or of other cases in the court; and (4) bad faith or willfulness in failing to make a required disclosure or comply with a court order.

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Standards > Appropriateness*
*Civil Procedure > Summary Judgment > Supporting Materials > Affidavits*
[HN4] Where sanctions under Fed. R. Civ. P. 37 are not appropriate, the United States Court of Appeals for the Third Circuit has held that a court deciding a motion for summary judgment may disregard or strike a Fed. R. Civ. P. 56(e) opposing affidavit if it directly contradicts the affiants's prior testimony without a satisfactory explanation. If an issue raised in the Fed. R. Civ. P. 56(e) affidavit had never been directly addressed at deposition, or the prior testimony was ambiguous, the affidavit will typically be viewed as a permissible clarification. However, where the new affidavit offers so many new opinions that it dramatically changes the flavor and

theory of the case, it must be disregarded, even absent a Fed. R. Civ. P. 37 finding of bad faith.

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Opposition > Memoranda in Opposition*
*Civil Procedure > Summary Judgment > Supporting Materials > Affidavits*

[HN5] Fed. R. Civ. P. 56(c) and (e) establish that a party opposing a motion for summary judgment may serve opposing affidavits at any point prior to the date of the hearing.

COUNSEL: [*1] For Plaintiff NICHOLAS GILMAN: Allan H. Gordon, Kolsby Gordon Robin Shore & Bezar, Philadelphia, PA, Daniel A. Osborn, Beatie & Osborn LLP, New York, NY, Phyllis M. Parker and Todd S. Collins, Berger & Montague P.C., Philadelphia, PA, and Donald B. Lewis, Law Offices of Donald B. Lewis, Bala Cynwyd, PA.

For Defendant SAFEGUARD SCIENTIFICS, INC.: Michael S. Doluisio, Steven B. Feirson, and Stuart T. Steinberg, Dechert, Price & Rhoades, Philadelphia, PA, and William K. Dodds, Dechert, Price & Rhoades, New York, NY.

For Defendant WARREN V. MUSSER: H. Robert Fiebach, Cozen O'Connor, Philadelphia, PA.

JUDGES: J. Curtis Joyner, J.

OPINION BY: J. Curtis Joyner

OPINION:

### MEMORANDUM AND ORDER

JOYNER, J.

#### November 17th, 2004

Via the motion now pending before this Court, Defendants move to strike and preclude the testimony of Plaintiffs' expert as presented in an affidavit filed August 30, 2004. For the reasons which follow, this motion shall be granted as to the testimony addressing loss causation in the context of Plaintiff's market manipulation claim, and denied as to the remaining testimony in the affidavit.

### Factual Background

Plaintiffs, investors in Safeguard Scientifics, [*2] Inc., filed this action under Rule 10b-5 of the Securities Exchange Act, alleging two bases of liability. See 17 C.F.R. 240.10b-5. Plaintiffs claim, first, that Defendants failed to disclose material information regarding Safeguard CEO Warren Musser's changing financial position (the "omission claim"). Second, Plaintiffs allege that Defendants purchased stock in Safeguard's partner companies, including eMerge Interactive, Inc., with the intent of inflating and fraudulently manipulating Safeguard stock prices (the "market manipulation claim").

On May 18, 2004, this Court entered an Amended Scheduling Order setting the deadline for expert discovery for July 9, and the deadline for dispositive motions for July 30. Plaintiffs timely filed a Preliminary Report of Anticipated Testimony by Mr. R. Alan Miller (the "Preliminary Report") as well as a later supplemental report. Mr. Miller was deposed on June 29 regarding his expert opinions as presented in these reports.

On July 30, Defendants filed a Motion for Summary Judgment challenging Plaintiffs' omission and market manipulation claims on various grounds, including a lack of evidence with respect to loss [*3] causation, a key element of both claims. Plaintiffs' response to the motion was accompanied by a supporting Declaration by Mr. Miller (the "Miller Declaration") setting forth his opinions regarding loss causation. Defendants now move to strike the Miller Declaration as untimely, alleging that it is an improper expert report filed in violation of this Court's scheduling order. Alternatively, Defendants contend that the Miller Declaration must be stricken because it directly contradicts Mr. Miller's earlier sworn testimony.

### Relevant Legal Standards

[HN1] Parties are required to disclose the identity of potential expert witnesses, accompanied by a written expert report containing "a complete statement of all opinions to be expressed and the basis and reasons therefor" and "the data or other information considered by the witness in forming the opinions," within the time frames set out in Federal Rule of Civil Procedure 26. Fed. R. Civ. P. 26(a)(2)(B). Where additional relevant information becomes available such the initial expert report is rendered "incomplete or incorrect," a party is

Page 3

obligated to supplement [*4] or contradict the initial disclosure by filing a supplemental report before the deadline for pretrial disclosures. Fed. R. Civ. P. 26(e). If the court's scheduling order provides for rebuttal reports, a party may also submit an expert report to "contradict or rebut evidence" identified by the opposing party within the deadlines set by the court. Fed. R. Civ. P. 26(a)(2)(C). Finally, a party opposing a motion for summary judgment may serve opposing affidavits, including sworn statements by potential expert witnesses, at any point prior to the date of the hearing. Fed. R. Civ. P. 56(c), 56(e).

Rule 37 of the Federal Rules of Civil Procedure [HN2] provides for exclusionary sanctions where parties fail to comply with Rule 26 discovery requirements. With respect to timeliness, a court may prohibit a party from introducing matters in evidence where the party has failed to obey a scheduling order entered under Rule 26(f). Fed. R. Civ. P. 37(b)(2)(B). With respect [*5] to the substance of discovery disclosures, a party will not ordinarily be permitted to use information at trial or on a motion if the information should have been disclosed pursuant to Rule 26(a), and the party offers no substantial justification for failing to do so. Fed. R. Civ. P. 37(c)(1); Fed. R. Civ. P. 26, Notes of Advisory Committee on 1993 Amendments. Thus, if an expert's initial report does not include a complete statement of opinions to be expressed and the basis for these opinions, a court may prohibit the expert from later testifying on issues or opinions not addressed in the initial report. Johnson v. Vanguard Mfg., Inc., 34 Fed. Appx. 858, 859 (3rd Cir. 2002) (upholding district court's exclusion under 37(c)(1) of expert testimony on accident causation, a subject not addressed in his expert report).

[HN3] Given that exclusionary sanctions under Rule 37 are extreme in nature, a court may not impose them unless it first finds that the party: (1) revealed previously undisclosed evidence when trial was either imminent or in progress; or (2) acted in bad faith, which is more than a [*6] mere lack of diligence. Stein v. Foamex Int'l, Inc., No. 00-2356, 2001 U.S. Dist. LEXIS 12211 at 8-9, 2001 WL 936566 (E.D. Pa. 2001) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 791-93 (3rd Cir. 1994)). When making these determinations, a court should consider: (1) the prejudice or surprise of the party against whom the excluded evidence would have been offered, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of Rule 37 sanctions would disrupt the

orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to make a required disclosure or comply with a court order. Stein, 2001 U.S. Dist. LEXIS 12211 at 8-9 (citing In re Paoli, 35 F.3d at 791).

[HN4] Where sanctions under Rule 37 are not appropriate, the Third Circuit has held that a court deciding a motion for summary judgment may disregard or strike a 56(e) opposing affidavit if it directly contradicts the affiants's prior testimony without a satisfactory explanation. Hackman v. Valley Fair, 932 F.2d 239, 241 (3rd Cir. 1991); see also Martin v. Merrell Dow Pharm., Inc., 851 F.2d 703, 705 (3rd Cir. 1988). [*7] If an issue raised in the 56(e) affidavit had never been directly addressed at deposition, or the prior testimony was ambiguous, the affidavit will typically be viewed as a permissible clarification. See Giancristoforo v. Mission Gas & Oil Prods., Inc., 776 F. Supp. 1037, 1043 (E.D. Pa. 1991); Videon Chevrolet, Inc. v. General Motors Corp., 992 F.2d 482, 488 (3rd Cir. 1993). However, where the new affidavit offers so many new opinions that it dramatically changes the "flavor and theory" of the case, it must be disregarded, even absent a Rule 37 finding of bad faith. Stein, 2001 U.S. Dist. LEXIS 12211 at 11, 20 (quoting Pellegrino v. McMillen Lumber Prods. Corp., 16 F. Supp. 2d 574, 583 (W.D. Pa. 1996)).

### Discussion

### I. Timeliness of the Miller Declaration

Defendants move to strike the Miller Declaration as untimely pursuant to Rule 37(b)(2)(B), alleging that it is an impermissible expert report filed after the July 9, 2004 deadline for expert discovery set forth in this Court's Amended Scheduling Order.

While variously described by Plaintiffs as a "rebuttal" or "supplemental" report, we find that [*8] the Miller Declaration qualifies as neither. Because this Court's Amended Scheduling Order did not provide for Rule 26(a)(2)(C) rebuttal reports, the Miller Declaration cannot be characterized as such. See Aveka LLC v. Mizuno Corp., 212 F.R.D. 306, 310 (M.D. N.C. 2002). Likewise, as plaintiffs do not contend that Mr. Miller's original report was incomplete or incorrect, the Miller Declaration does not qualify as a Rule 26(e) supplemental report.

2004 U.S. Dist. LEXIS 23494, *8

The Miller Declaration is instead governed by Rules 56(c) and 56(e), which [HN5] establish that a party opposing a motion for summary judgment may serve opposing affidavits at any point prior to the date of the hearing. The Miller Declaration, filed as an accompaniment to Plaintiffs' memorandum of law in opposition to Defendants' motion for summary judgment, falls within this basic description of a 56(e) opposing affidavit, and was timely filed. Because it was presented as an opposing affidavit, rather than a rebuttal or supplemental expert report, the Miller Declaration does not run afoul of this Court's Amended Scheduling Order and may not be stricken on those grounds.

## II. Impermissible Supplements and Contradictory Affidavits [*9]

Defendants have identified three portions of the Miller Declaration that allegedly contradict or impermissibly supplement Mr. Miller's Preliminary Report and deposition testimony. We find that the portions of the Miller Declaration addressing loss causation in the context of Plaintiffs' market manipulation claim must be stricken, as they untimely supplement and directly contradict Mr. Miller's prior testimony. The remainder of the Miller Declaration does not appear to violate the discovery requirements of Rule 26(a) or the Rule 56(e) standards for opposing affidavits.

### A. The Causal Impact of eMerge Purchases on Safeguard Stock Prices

Mr. Miller's Preliminary Report begins with a list of subjects on which Plaintiffs' counsel requested Mr. Miller's opinion. This list covers various aspects of Plaintiffs' omission claim, referring repeatedly to the "omissions and misstatements" described in the Complaint, but does not mention Plaintiffs' market manipulation claim directly. Preliminary Report, P 1. Indeed, within the Preliminary Report, Mr. Miller present no opinion at all regarding the causation aspect of the market manipulation claim, specifically, whether the eMerge [*10] trades had any causal impact on Safeguard's stock price. The subsection of the Preliminary Report entitled "Loss Causation" is only two paragraphs long, and does not address causation with respect to the manipulation claim, referring only to the causal effect of "the omissions and misstatements described in the Complaint and/or discussed heretofore." Preliminary Report, P 26, 27. In fact, Mr. Miller states in P 13 of the Preliminary Report that he had "not yet separately calculated the effect" of the eMerge purchases on Safeguard stock prices.

Despite the fact that Mr. Miller's Preliminary Report gave no opinion on loss causation in the market manipulation context, and on its face established that no relevant calculations had been done, Defendants' counsel later questioned Mr. Miller extensively during his deposition to confirm his position (or lack thereof) on this issue:

> Q: In your report at paragraph 13, you indicate, Mr. Miller, that you have not yet separately calculated the effect of the undisclosed eMerge purchases by Musser and associated entities on eMerge and/or Safeguard's stock prices. Does that remain true as of the current date?
>
> ...
>
> Q: So at this juncture, regardless [*11] of the intent of the parties making those purchases, you have not formulated an analysis as to whether or not those purchases had an impact on the stock price of either eMerge or Safeguard?
>
> ...
>
> Q: Do you make any assumption one way or the other that those purchases had an impact on the stock price of either eMerge or Safeguard's stock?
>
> A: Yes. In the trading sense?
>
> Q: Yes.
>
> ...
>
> Q: You could do a statistical analysis to determine the impact of these purchases on Safeguard's stock and in turn - I'm sorry - on eMerge's stock and in turn on Safeguard's stock, correct, one could do that?
>
> ...
>
> BY MR. DODDS: Well, did you do a separate analysis of the market

manipulation alleged with respect to the purchases in eMerge stock?

MR. COLLINS: I'm sorry, separate from what? MR. DODDS: Separate from his other damage analysis?

(Miller Deposition, p. 208-213)

BY MR. QUINN: There's no calculation to support that allegation?

MR. COLLINS: Which portion of the allegation?

MR. QUINN: That there was a market effect of favorably impacting or distorting the performance of eMerge in the aftermarket.

Q: There's no calculation to support that, correct?

MR. COLLINS: Vague and ambiguous. [*12]

Q: Is there a calculation to support that?

...

Q: So there is no calculation as to any impact on eMerge stock prices?

(Miller Deposition, p. 339-340)

In response to these questions, Mr. Miller consistently responded that, "as a separate item" apart from the calculation of damages for the non-disclosure claim, he had not analyzed the effect of the allegedly manipulative eMerge purchases on eMerge or Safeguard stock prices. (Miller Deposition, p. 209, 213-14, 339-340). Mr. Miller did, however, "hesitatingly" admit that one could do such a statistical analysis. He also stated that "we made the observation that [the eMerge purchases] very likely did on at least certain days or certain weeks have a positive impact on those prices due to the proportion of volume that those purchases made up at the times they were made." (Miller Deposition, p. 210-211). To this Court, at least, Mr. Miller's responses at deposition seem clear - while Mr. Miller believed, simply based on the volume of eMerge purchases, that the trades

likely had a positive impact on stock prices, he had performed no more detailed calculations or analyses to determine whether there was a true causal impact.

The [*13] Miller Declaration, however, asserts that "We did indeed analyze the impact of trading in eMerge stock by Musser, Grinker, Safeguard and the Foundations prior to Plaintiffs' submission of the Answers to Interrogatories. We concluded that there was considerable market impact that necessarily inflated the price of eMerge stock and thereby inflated or propped up the price of Safeguard stock..." Miller Declaration, P 16.

Rule 37 Exclusionary Sanctions are Appropriate

Plaintiffs, in bringing this action for market manipulation, are well aware that loss causation is one of the elements of the claim. If Plaintiffs intended at any time to present Mr. Miller's expert opinion as to the causation element of the market manipulation claim, they were obligated to timely submit or supplement an expert report presenting this opinion and its basis pursuant to Rule 26(a)(2)(B). Because the Preliminary Report did not include a statement of Mr. Miller's opinion regarding causation in the market manipulation context, and because evidence of related calculations or analyses was presented for the first time in the Miller Declaration, we find that Plaintiffs have failed to comply with expert witness [*14] disclosure requirements.

This Court further finds that preclusion of this evidence under Rule 37(c)(1) is appropriate because the Miller Declaration was filed in bad faith, prejudicing Defendants and disrupting the efficient trial of this case. Stein, 2001 U.S. Dist. LEXIS 12211 at 8-9. In Stein, the plaintiff timely filed an expert report identifying five specific areas of concern regarding environmental contaminants on Plaintiff's property. 2001 U.S. Dist. LEXIS 12211, [WL] at 3. After defendants moved for summary judgment, plaintiff introduced a 56(e) opposing affidavit by the same expert identifying a new area of concern, vinyl chloride contamination, on which the expert had not opined in his initial report. 2001 U.S. Dist. LEXIS 12211, [WL] at 4-5. This Court found that the affidavit was filed in bad faith because it was "carefully tailored, by [Plaintiff's] counsel, to dovetail with the statutory requirements the Defendants claimed [Plaintiff] had failed to prove." 2001 U.S. Dist. LEXIS 12211, [WL] at 19. This Court struck the portions of the affidavit expressing opinions that should have been disclosed in the preliminary expert report, finding that any other result

"would effectively circumvent the requirement for the disclosure [*15] of a timely and complete expert report." 2001 U.S. Dist. LEXIS 12211, [WL] at 18.

Plaintiffs' use of the Miller Declaration to present a new expert opinion on the causal impact of the eMerge purchases is equally concerning. The fact that Mr. Miller's Preliminary Report did not even touch on an issue so central to Plaintiffs' claim exceeds a "mere lack of diligence" on counsel's part. 2001 U.S. Dist. LEXIS 12211, [WL] at 19. Plaintiffs have offered no justification for this delay, which comes after months of discovery, and their suggestion that Defendants cure any prejudice by re-deposing Mr. Miller is without merit. As this Court emphasized almost nine months ago, "nearly three years have elapsed since [the case's] inception, discovery has closed and the matter is now trial-ready." In Re Safeguard Scientifics, 220 F.R.D. 43, 49 (E.D. Pa. 2004). Allowing Plaintiffs to rely on Mr. Miller's opinions regarding loss causation for the market manipulation claim, either in their response to Defendants' summary judgment motion or at trial, would be unfair to Defendants and would disrupt the efficient disposition of this case. Accordingly, this Court must exercise its discretion under Rule 37(c)(1) to preclude this evidence. [*16]

**Exclusion Under Rule 56 is Also Appropriate**

Furthermore, this Court finds that the new opinions presented in Plaintiff's 56(e) opposing affidavit regarding the causal impact of eMerge trading must be stricken because they directly contradict Mr. Miller's prior testimony. See Hackman, 932 F.2d at 241.

Plaintiffs contend that there is an ambiguity in the apparent contradiction between the Miller Declaration and the statement at P 13 of the Preliminary Report (later affirmed at deposition) that no analysis had been done regarding the impact of the eMerge trades. Plaintiffs allege that the relevant portions of the Preliminary Report and the deposition testimony referred only to calculations of damages, and were not intended to suggest that no calculations had been made with respect to loss causation, a key element of the market manipulation claim. Plaintiffs further contend that this ambiguity was exacerbated by Defendants' tactical decision not to ask deposition questions regarding loss causation "in order to clear the decks for their summary judgment motion." (Plaintiffs' Response, p. 10-11).

Given the sheer number of times Defendants' counsel asked Mr. [*17] Miller about his opinions and analyses regarding the causal effect of the eMerge trades, we find Plaintiffs' allegation baseless. Under the circumstances, we "do not believe that defense counsel can reasonably be held accountable for having failed to uncover" a hidden meaning behind testimony that otherwise seemed abundantly clear. Pellegrino, 16 F. Supp. 2d at 583-84 (granting defendants' motion to strike an opposing affidavit where defense counsel had attempted to exhaust the factual bases of plaintiff's claim during deposition but plaintiff had been "purposely evasive" regarding facts necessary to establish her claim). This Court finds no ambiguity in Mr. Miller's testimony in response to defense counsel's deposition questions. Because of the direct contradiction between this testimony and the Miller Declaration, this Court will disregard, in deciding the pending motion for summary judgment, all information in the Miller Declaration relating to loss causation of the market manipulation claim.

**2. Disclosure Events Relevant to Causation Analysis**

The section of Mr. Miller's Preliminary Report entitled "Loss Causation" indicates that a review was done of [*18] Safeguard stock prices and market movements in connection with news articles, analyst reports, SEC filings and other disclosure events from October 1, 1999 to April 30, 2001. Preliminary Report, P 26, Exhibit G. Mr. Miller concludes that the declines in Safeguard stock prices "which occurred after the relevant disclosures were substantially related to the issues raised in the Complaint," but does not identify specifically which of the hundreds of disclosures in Exhibit G he considered "relevant" for the purposes of determining loss causation. Preliminary Report, P 26.

In an earlier section of the Preliminary Report addressing damage calculations, Mr. Miller explains that he calculated the true value of Safeguard stock by looking at price movements after three "relevant disclosures" relating to Mr. Musser's margin loan agreement - a Dow Jones Business News article dated December 18, 2000, a Wall Street Journal Article dated February 9, 2001, and a Fortune Magazine article dated February 20, 2001. Preliminary Report, P 12, P 14, Exhibit C. In the same paragraph, however, Mr. Miller emphasizes that his approach to calculating damages is conservative, and that "there is some evidence [*19] to

Page 7

suggest that there could be additional relevant declines in Safeguard stock price which we have not taken into account for calculating damages at this time," including the three trading days after Mr. Musser's November 29, 2000 sale of 6.5 million Safeguard shares. Preliminary Report, P 14. Mr. Miller also refers to the December 5, 2000 disclosure which revealed for the first time that Mr. Musser had to sell his Safeguard shares to meet a margin loan arrangement. Preliminary Report, P 14.

At deposition, Defendants' counsel questioned Mr. Miller extensively about the market impact of various disclosures in connection with Plaintiffs' omission claim. Mr. Miller first noted that, while "we often do differentiate" between market impact and damage analyses, "that's not to imply that they're not connected under some measures of damages." Miller Deposition, p. 75. Mr. Miller stated that the three disclosure occasions used to calculate damages were not necessarily "exhaustive in terms of market impact." Miller Deposition, p. 78. In fact, Mr. Miller indicated that his market impact analysis was based on his observations of "quite a number of statements" made during the period in question, [*20] including the December 5, 2000 announcement and the trading activity between November 29 and December 4, 2000. Miller Deposition, pp. 78-80. Mr. Miller admits that his team has continued to look at those two additional disclosures to determine what effect, if any, they had on Safeguard prices. Miller Deposition, p. 80, 111.

The Miller Declaration, under the heading "Loss Causation," identifies five occasions on which disclosures of material information caused Safeguard's stock price to react negatively. Miller Declaration, P 14. Defendants object to the inclusion of two of these disclosure occasions (December 5, 2000 and the trading days following November 29, 2000), as the Preliminary Report did not cite these dates in its damages calculation.

### Sanctions Under Rule 37 or 56 are Inappropriate

Plaintiffs have satisfied the requirements of Rule 26(a)(2)(B) with respect to Mr. Miller's opinions on loss causation for the five disclosure occasions in the Miller Declaration. The Preliminary Report clearly states Mr. Miller's opinion that Safeguard stock prices dropped in connection with public disclosures of information allegedly withheld or misreported by Defendants, and establishes [*21] that this opinion was based on a review of stock prices and disclosure events. Mr. Miller's failure

to identify with specificity the disclosures he focused on in establishing loss causation is not fatal, particularly as Defendants' counsel questioned him extensively during deposition to identify the relevant disclosure events behind his market impact analysis. For the purpose of determining damages, however, Plaintiffs are obviously limited to the three disclosure dates identified in P 14 of the Preliminary Report.

We likewise refuse to strike the Miller Declaration pursuant to Rule 56(e), as it does not directly contradict Mr. Miller's prior testimony. Both the Preliminary Report and Mr. Miller's testimony established that the analysis of causal impact was based on a number of disclosure events. Neither sworn statement limited Mr. Miller's analysis of loss causation to the three disclosure events highlighted as relevant to the damages analysis.

### 3. The Dow Jones Article as Evidence of Loss Causation

In the Preliminary Report, Mr. Miller identifies three dates when a "decline in Safeguard's stock price [was] attributable to" relevant disclosure events. Preliminary Report, [*22] P 12, P 14. On one of these dates, Monday, December 18, 2000, a Dow Jones Business News article was published discussing Mr. Musser's recent trading activity, and Safeguard's price dropped approximately 17%. The article, which was published late in the day, reported that Safeguard's stock prices had dropped sharply "as focus apparently returned to the firm's chairman selling 7.5 million shares earlier this month." The article cited one analyst's suggestion that some investors may not have known about the sales "until Monday," [n1] when details of Mr. Musser's SEC filings were published.

> n1 It is unclear from the wording of the Dow Jones article whether "until Monday" refers to the date that the article was published, Monday, December 18, or the previous Monday, December 11.

In their Motion for Summary Judgment, Defendants rightly point out that the December 18 drop in Safeguard's stock price, which occurred well before the Dow Jones article was released, could not have been caused by the disclosures in the article. [*23] The Miller Declaration admits this fact, and clarifies that the Dow

2004 U.S. Dist. LEXIS 23494, *23

Jones article itself was not a cause of the price drop, but rather "evidence of loss causation." Miller Declaration, P 4-C. Defendants now challenge this statement as contradicting Mr. Miller's earlier position.

### Sanctions under Rule 37 or 56 are inappropriate

We find no inherent contradiction between Mr. Miller's current position and his earlier statement that declining Safeguard prices on December 18 could have been attributed to certain relevant disclosures. Appendix C to the Preliminary Report clearly indicated that the Dow Jones article was a summary, rather than news itself, and Mr. Miller never claimed that the article itself caused the December 18 price drop. If Defendants wish to further contest Mr. Miller's selection of December 18 as a relevant disclosure date, this Court reminds them that they will have ample opportunity to do so at trial.

### III. Violations of the Daubert Standard

Defendants also move to strike the Miller Declaration as violative of the standards for expert testimony set forth in Daubert v. Merrell Dow Pharms., 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993). [*24] As we have above found that the portion of the Miller Declaration addressing loss causation in the market manipulation context must be stricken, Defendants' Daubert challenge to this section appears moot.

Defendants likewise claim that Mr. Miller's conclusion regarding the market impact of a December 5, 2000 disclosure violates Daubert standards because it is not supported by verifiable scientific analysis. While we withhold judgment on this issue at this point in time, Plaintiffs may petition this Court for a full Daubert

hearing if they wish to further pursue this challenge.

An appropriate Order follows.

### ORDER

AND NOW, this 17th day of November, 2004, upon consideration of Defendants' Motion to Strike and Preclude Testimony of Plaintiffs' Expert, R. Alan Miller, and for Costs (Docs. No. 64, 65) and all responses thereto (Docs. No. 66, 67, 68), it is hereby ORDERED that the Motion is GRANTED in part and DENIED in part, as follows:

1. Defendants' Motion to Strike is GRANTED ONLY with respect to paragraphs 16 through 19 of the Miller Declaration. These paragraphs shall be stricken from the record in this case.

2. Defendants' Motion to Preclude is GRANTED [*25] ONLY with respect to Mr. Miller's testimony regarding the matters and opinions contained in paragraphs 16 through 19 of the Miller Declaration. Mr. Miller is precluded from presenting expert testimony regarding his opinions on loss causation in the context of Plaintiff's market manipulation claim inasmuch as those opinions are not contained in his Preliminary Report, dated February 6, 2004, or his Supplemental report, dated March 15, 2004.

3. Defendants' request for costs and expenses incurred in connection with their Motion to Strike and Preclude Testimony is DENIED.

s/J. Curtis Joyner

J. CURTIS JOYNER, J.

# EXHIBIT D

LEXSEE



Caution

As of: Apr 11, 2007

### CHARLES D. STEIN v. FOAMEX INTERNATIONAL, INC., et al.

### CIVIL ACTION No. 00-2356

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### 2001 U.S. Dist. LEXIS 12211

### August 15, 2001, Filed

**DISPOSITION:** [*1] Defendants' Motion to Preclude GRANTED. Defendants' Motion to Strike GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff property owner filed suit against defendant lessors alleging violations of several environmental statutes. The lessors subsequently moved for partial summary judgment. The lessors asserted that the property owner's expert filed an affidavit that clearly contradicted the opinions expressed in his expert report. The lessors therefore filed the instant motions to strike and to preclude.

**OVERVIEW:** The property owner contended that the lessors contaminated the property and he alleged violations under several federal environmental statutes. The property owner hired an environmental investigator who because the property owner's expert in the litigation. The lessors believed that the expert's affidavit contradicted his expert report and deposition testimony, and was filed only to allow the property owner to survive the motion for partial summary judgment. The court held that because the affidavit was filed after the date set for the serving of expert reports, the affidavit did not qualify as an original expert report. Also, the affidavit was not considered to be a supplement to the expert report where the changes were not made in accordance with Fed. R. Civ. P. 26. The court held that preclusion of the evidence

was appropriate because the affidavit was filed in bad faith and the lessors were prejudiced by its late filing.

**OUTCOME:** The lessors' motions to preclude and to strike were granted.

**CORE TERMS:** expert report, disclosure, vinyl chloride, contradict, environmental, deposition, prior testimony, supplementation, summary judgment, human health, imminent, disclose, parrafin, oil, hazardous, diligence, preparing, investigative, endangerment, incomplete, opine, pool, contradiction in terms, expert witness, advisory, contradiction, supplemented, confidential, undisclosed, preparation

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
[HN1] Fed. R. Civ. P. 26 requires that parties disclose the identity of any expert witness who may be used at trial. Fed. R. Civ. P. 26(a)(2)(A). That disclosure must also be accompanied by a written report prepared and signed by the witness. Fed. R. Civ. P. 26(a)(2)(B). The expert report shall contain a complete statement of all opinions to be

Page 1

expressed and the basis and reasons therefor, as well as the data or other information considered by the witness in forming the opinions. Assuming the court establishes a schedule for such disclosures, parties must disclose their expert reports at the times and in the sequences directed by the court. Fed. R. Civ. P. 26(a)(2)(C).

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
[HN2] Fed. R. Civ. P. 26 imposes a duty to supplement expert reports.

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
[HN3] See Fed. R. Civ. P. 26(e)(1).

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
[HN4] Any additions or changes to the information contained in an expert report shall be disclosed by the time the parties disclosures under Fed. R. Civ. P. 26(a)(3) are due. Disclosures pursuant to Fed. R. Civ. P. 26(a)(3) shall be made, unless otherwise directed by the court, at least 30 days before trial. Fed. R. Civ. P. 26 (a)(3).

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Misconduct*
*Civil Procedure > Discovery > Motions to Compel*
[HN5] Failure to properly disclose or supplement information in accordance with Fed. R. Civ. P. 26 can result in sanctions pursuant to Fed. R. Civ. P. 37(c)(1). Fed. R. Civ. P. 37 provides that a party that without substantial justification fails to disclose information required by Fed. R. Civ. P. 26(a) or Fed. R. Civ. P. 26(e)(1) is not, unless such failure is harmless, permitted to use as evidence at a trial any witness or information not so disclosed. Fed. R. Civ. P. 37 provides for other sanctions as well, and the determination of which sanction to impose is within the sound discretion of the trial court.

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
*Civil Procedure > Discovery > Misconduct*
[HN6] Discretion notwithstanding, the exclusion of critical evidence is an extreme sanction. Indeed, the United States Court of Appeals for the Third Circuit requires more than a literal violation of Fed. R. Civ. P. 26; before a court preludes a party from presenting certain evidence at trial, it must first find that the party: (1) revealed previously undisclosed evidence when trial was either imminent or in progress; or (2) acted in bad faith, which is more than a mere lack of diligence. When making those determinations, courts should consider: (1) the prejudice or surprise in fact of the party against whom the excluded evidence would have been offered; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the Fed. R. Civ. P. 37 sanctions would disrupt the orderly and efficient trial of the case or of other cases in the court; and (4) bad faith or willfulness of the party failing to make a required disclosure.

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Supporting Materials > Affidavits*
[HN7] Fed. R. Civ. P. 56 permits parties bringing a motion for summary judgment to accompany that motion with supporting affidavits. Fed. R. Civ. P. 56(a). A party defending a motion for summary judgment may also employ supporting affidavits. Fed. R. Civ. P. 56(b). Supporting affidavits are subject to several requirements.

*Civil Procedure > Summary Judgment > Supporting Materials > Affidavits*
[HN8] In a motion for summary judgment, supporting affidavits must be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Fed. R. Civ. P. 56. Supporting affidavits must be brought in good faith; if a litigant offers a supporting affidavit in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

2001 U.S. Dist. LEXIS 12211, *1

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Supporting Materials > Affidavits*
[HN9] In a summary judgment motion, supporting affidavits may not clearly contradict prior sworn testimony. To allow parties to file supporting affidavits that contradicted prior testimony would be to allow them to subvert the purpose of motions for summary judgment. Courts may therefore disregard such affidavits. For a court to disregard and strike an affidavit, however, the contradiction must be clear; an affidavit that explains rather than contradicts prior testimony should not be disregarded. Generally, courts will only disregard an affidavit if the contradiction relates to questions actually posed to the witness. Nevertheless, courts may disregard an affidavit even if the witness was not explicitly examined on an issue, if allowing the affidavit to stand would change the flavor and theory of the case by introducing new causes of action or entirely new theories of recovery not previously disclosed.

*Civil Procedure > Summary Judgment > Supporting Materials > General Overview*
[HN10] In the context of a summary judgment motion, even if an affidavit does conflict with prior testimony, courts should not strike it if it satisfactorily explains the contradiction in terms of a mistake made while previously testifying.

*Civil Procedure > Discovery > Disclosures > General Overview*
*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
[HN11] It is required that expert reports provide a complete statement of all opinions to be expressed. Fed. R. Civ. P. 26 also allows parties to supplement the opinions expressed in their experts' reports, so long as such changes are made in accordance with the rule. Fed. R. Civ. P. 26(e)(1).

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
[HN12] Fed. R. Civ. P. 26 requires that expert reports contain a complete statement of all opinions to be expressed and the data or other information considered by the witness in forming the opinions, while it only provides for the supplementation of information contained in an expert report. Fed. R. Civ. P. 26(a)(2)(B), (e)(1). When read in conjunction, these provisions might lead one to believe that the Rule allows only for the supplementation of information on which opinions are based, but not the opinions themselves. The Advisory Committee Notes state, however, that the rule's duty to supplement requires disclosure of any material changes made in the opinions of an expert from whom a report is required. Fed. R. Civ. P. 26 advisory committee's note (1993).

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
[HN13] Supplementation of expert reports shall be disclosed by the time the parties disclosures under Fed. R. Civ. P. 26(a)(3) are due. Disclosures pursuant to Fed. R. Civ. P. 26(a)(3) shall be made, unless otherwise directed by the court, at least 30 days before trial. Fed. R. Civ. P. (a)(3).

*Civil Procedure > Counsel > General Overview*
*Civil Procedure > Discovery > Disclosures > General Overview*
*Evidence > Testimony > Experts > Helpfulness*
[HN14] Fed. R. Civ. P. 26 requires that expert reports be prepared and signed by the witness. Fed. R. Civ. P. 26(a)(2)(B). Fed. R. Civ. P. 26 advisory committee's notes state that the rule does not preclude counsel from providing assistance to experts in preparing the reports. Fed. R. Civ. P. 26 advisory committee's notes (1993). Nevertheless, Fed. R. Civ. P. 26(a)(2)(B) does not contemplate blanket adoption of reports prepared by counsel or others.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > General Overview*
[HN15] In order to preclude a party from presenting evidence, the Third Circuit requires that the offending party must have: (1) revealed previously undisclosed evidence when trial was either imminent or in progress; or (2) acted in bad faith, which is more than a mere lack of diligence.

*Civil Procedure > Summary Judgment > Supporting Materials > General Overview*
*Civil Procedure > Sanctions > General Overview*
*Legal Ethics > Sanctions > General Overview*
[HN16] Fed. R. Civ. P. 56(g) makes the filing of an affidavit in bad faith a sanctionable act that justifies holding a party or an attorney in contempt.

COUNSEL: For CHARLES D. STEIN, PLAINTIFF: JANICE V. QUIMBY-FOX, JOHN M. ARMSTRONG, SCHNADER, HARRISON, SEGAL & LEWIS, PHILA, PA USA.

For FOAMEX INTERNATIONAL, INC., FOAMEX L.P., FOAMEX CARPET CUSHION, INC., GENERAL FELT INDUSTRIES, INC./GFI-FOAMEX, MARSHALL S. COGAN, DEFENDANTS: GAYLE G. GOWEN, PHILADELPHIA, PA USA. GLEN R. STUART, MORGAN, LEWIS & BOCKIUS, PHILADELPHIA, PA USA.

JUDGES: JAMES McGIRR KELLY, J.

OPINION BY: JAMES McGIRR KELLY

OPINION:

### MEMORANDUM AND ORDER

**J. M. KELLY, J.**

Presently before the Court are a Motion to Strike and a Motion to Preclude, both of which were filed by the Defendants, Foamex International, Inc., Foamex L.P., Foamex Carpet Cushion, Inc., Trace International Holdings, Inc., General Felt Industries, Inc., GFI-Foamex and Marshall S. Cogan (collectively referred to as the "Defendants"). In this case, the Plaintiff, Charles D. Stein ("Stein"), filed suit against the Defendants, alleging violations of several environmental statutes. Stein served an Expert Report in support of his claims. The Defendants subsequently filed a Motion for Partial Summary Judgment. The Defendants [*2] assert that, in order to survive the Motion for Summary Judgment, Stein's expert filed an Affidavit that clearly contradicts the opinions expressed in his Expert Report. The Defendants have therefore filed the instant Motions. For the following reasons, those Motions are granted.

### I. BACKGROUND

Stein is the owner of a twenty-two acre industrial property located in Philadelphia. The Defendants or their predecessors had leased that property from Stein for forty years. As part of their operations, the Defendants installed several underground storage tanks on the property. Stein alleges that, at some time in 1996 while the Defendants were occupying his property, it became contaminated. Stein filed his Complaint against the Defendants, alleging, among other state law claims, violations of several federal environmental statutes. Stein seeks compensation for the damages allegedly caused to his property, as well as his investigative, remedial and legal fees.

Stein had originally hired Sadat Associates ("Sadat") to perform environmental investigations on his property. Sadat prepared a May 1999 Site Characterization Report, which concluded that some vinyl chloride had been released [*3] on Stein's property. By Order of this Court, Stein had to serve any expert reports in this case no later than December 1, 2000. Stein ultimately chose Gary Brown ("Brown"), not Sadat, as his expert. Stein served Brown's Expert Report in a timely manner. Stein did not supplement that Expert Report before December 1. The Defendants deposed Brown on February 28, 2001.

Brown's Expert Report identified five areas of concern on Stein's property. See Brown Expert Report at 3. Brown summarized the first area of concern as "soils and groundwater impacted by releases of petroleum from the Fuel Oil Tanks and/or Outside Parrafin Tanks." Id. Describing this area of concern, Brown's Expert Report mentions only parrafin oil releases near the Outside Parrafin Oil Tank. Id. at 2, 4, 8. The Expert Report stated that "the foregoing areas of concern constitute releases or threatened releases of hazardous substances or petroleum." Id. at 13. Brown's Expert Report also concluded that the alleged "parrafin oil free product release at this site constitutes a substantial endangerment to human health and/or the environment . . . ." Id. When read in conjunction, these different sections [*4] of Brown's Expert Report clearly opine that parrafin oil on the property constitutes a release or threatened release that was a substantial endangerment to human health or the environment.

Importantly, nowhere does the Expert Report mention vinyl chloride as an area of concern. Although Sadat's Site Characterization Report mentioned the presence of vinyl chloride, and Brown's Expert Report

2001 U.S. Dist. LEXIS 12211, *4

mentioned the Site Characterization Report as a reference, the Expert Report neither adopted those particular findings nor vouched for their reliability. Indeed, the Expert Report does not expressly refer to that particular conclusion at all. Rather, the Expert Report simply mentions that Sadat had performed work for Stein.

The Defendants filed a Motion for Partial Summary Judgment on March 14, 2001. Briefly stated, the Defendants argued that Stein's federal statutory claims must fail because he had not presented evidence of a threshold amount of proscribed contamination. Specifically, the Defendants argued that, in order to recover, Stein would have to prove that there was an imminent and substantial environmental endangerment, and that the costs of Stein's environmental investigation work were [*5] necessary to address the release or threatened release of hazardous substances. See Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9607(a)(4)(B) (1994); Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6972(a)(1)(B) (1994).

The Court granted several extensions of time in this case. Finally, on March 22, 2001, pursuant to a stipulation of the parties, the Court ordered that the case would be placed in the trial pool on May 6, 2001.

Stein then filed a Brief in Opposition to the Defendants' Motion for Partial Summary Judgment on April 6, 2001. Attached to that Brief was an Affidavit of Brown. This Affidavit asserted that: (1) there has been a release or threatened release of vinyl chloride on Stein's property; (2) the release constituted "an actual and significant threat to human health and the environment"; (3) the Defendants caused the release; and (4) certain monitoring and investigative activities on Stein's property, performed by Sadat and later by Brown, were necessary to address the release and threatened release of hazardous substances. See Brown Aff. PP 7-9, 13, [*6] 24-25.

The Defendants believe that Brown's Affidavit contradicts his Expert Report and deposition testimony, and was filed for the sole purpose of allowing Stein to survive the Defendants' Motion for Partial Summary Judgment. They therefore ask the Court to strike the Affidavit and preclude Brown from testifying about opinions not originally expressed in his first Expert Report.

## II. STANDARDS OF REVIEW

1. The Defendants' Motion to Preclude

[HN1] Federal Rule of Civil Procedure 26 requires that parties disclose the identity of any expert witness who may be used at trial. Fed. R. Civ. P. 26(a)(2)(A). That disclosure must also be accompanied by a "written report prepared and signed by the witness." Id. (a)(2)(B). The expert report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor," as well as "the data or other information considered by the witness in forming the opinions . . . ." Id. Assuming the court establishes a schedule for such disclosures, parties must disclose their expert reports "at the times and in the sequences directed by the court." Id. (a)(2)(C).

[HN2] Rule 26 also imposes a duty to supplement [*7] expert reports. Id. ("The parties shall supplement these disclosures when required under subdivision (e)(1)."). Specifically, [HN3] Rule 26(e)(1) provides that:

> [a] party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete . . . . With respect to testimony of an expert from whom a report is required . . . the duty extends both to information contained in the report and to information provided through a deposition of the expert . . . .

Id. (e)(1). [HN4] Any additions or changes to the information contained in an expert report "shall be disclosed by the time the parties disclosures under Rule 26(a)(3) are due." Id. Disclosures pursuant to Rule 26(a)(3) shall be made, unless otherwise directed by the court, at least thirty days before trial. Id. (a)(3).

[HN5] Failure to properly disclose or supplement information in accordance with Rule 26 can result in sanctions pursuant to Federal Rule of Civil Procedure 37(c)(1). See Fed. R. Civ. P. 37(c)(1). Rule 37 provides that "[a] party that without substantial justification fails to disclose [*8] information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness or

Page 5

information not so disclosed." Id. Rule 37 provides for other sanctions as well, and the determination of which sanction to impose is within the sound discretion of the trial court. Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 156 (3d Cir. 1995).

[HN6] Discretion notwithstanding, "the exclusion of critical evidence is an extreme sanction." Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 905 (3d Cir. 1977). Indeed, the United States Court of Appeals for the Third Circuit requires more than a literal violation of Rule 26; before a court preludes a party from presenting certain evidence at trial, it must first find that the party: (1) revealed previously undisclosed evidence when trial was either imminent or in progress; or (2) acted in bad faith, which is more than a mere lack of diligence. See, e.g., In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 791-93 (3d Cir. 1994); In re TMI Litig. Cases Consol. II, 922 F. Supp. 997, 1004 (M.D. Pa. 1996). When [*9] making those determinations, courts should consider: (1) the prejudice or surprise in fact of the party against whom the excluded evidence would have been offered; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the Rule 37 sanctions would disrupt the orderly and efficient trial of the case or of other cases in the court; and (4) bad faith or willfulness of the party failing to make a required disclosure. Id.; In re Paoli, 35 F.3d at 791; Pennypack, 559 F.2d at 905.

2. The Defendants' Motion to Strike

[HN7] Federal Rule of Civil Procedure 56 permits parties bringing a motion for summary judgment to accompany that motion with supporting affidavits. Fed. R. Civ. P. 56(a). A party defending a motion for summary judgment may also employ supporting affidavits. Id. (b). Supporting affidavits are subject to several requirements.

First, [HN8] supporting affidavits must be "made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Id. (e). Second, supporting affidavits must [*10] be brought in good faith; if a litigant offers a supporting affidavit in bad faith or solely for the purpose of delay, "the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees,

and any offending party or attorney may be adjudged guilty of contempt." Id. (g).

Finally, [HN9] supporting affidavits may not clearly contradict prior sworn testimony. To allow parties to file supporting affidavits that contradicted prior testimony would be to allow them to subvert the purpose of motions for summary judgment. Courts may therefore disregard such affidavits. For a court to disregard and strike an affidavit, however, the contradiction must be clear; an affidavit that explains rather than contradicts prior testimony should not be disregarded. Compare Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991) (affidavit conflicted with prior testimony), and Martin v. Merrell Dow Pharm., Inc., 851 F.2d 703, 705 (3d Cir. 1988) (same), and Hyde Athletic Indus. Inc. v. Continental Cas. Co., 969 F. Supp. 289, 298 (E.D. Pa. 1997) [*11] (same), with Giancristoforo v. Mission Gas & Oil Prods., Inc., 776 F. Supp. 1037, 1043 (E.D. Pa. 1991) (affidavit clarified prior testimony). Generally, courts will only disregard an affidavit if the contradiction relates to questions actually posed to the witness. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 284 (3d Cir. 2000); Videon Chevrolet, Inc. v. General Motors Corp., 992 F.2d 482, 488 (3d Cir. 1993). Nevertheless, courts may disregard an affidavit even if the witness was not explicitly examined on an issue, if allowing the affidavit to stand would change the "flavor and theory" of the case by introducing new causes of action or entirely new theories of recovery not previously disclosed. See Pellegrino v. McMillen Lumber Prods. Corp., 16 F. Supp. 2d 574, 583 (W.D. Pa. 1996) (concluding that counsel could not reasonably be held accountable for failing to uncover information through discovery because it greatly differed from nature of case as stated in complaint). Finally, [HN10] even if an affidavit does conflict with prior testimony, courts should not strike it if it satisfactorily explains the contradiction [*12] in terms of a mistake made while previously testifying. See Martin, 851 F.2d at 705.

### III. DISCUSSION

1. The Defendants' Motion to Preclude

  1. Whether Stein Violated Rule 26

The Court must first determine whether Stein violated Rule 26, a condition precedent to the imposition of sanctions under Rule 37 that the Defendants assume and Stein apparently conceded without inquiry. It is clear

Page 6

that Stein timely disclosed the identity of Brown as his expert witness, and that Brown's Expert Report was timely served before the date set by the Court. Accordingly, Brown may testify at trial and may express all opinions clearly expressed in his Expert Report. n1

n1 The Court notes that the Expert Report does violate Rule 26 in that its disclosures were incomplete when made and were not, and have yet to be, formally supplemented by Stein. Specifically, expert reports should contain "a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." Fed. R. Civ. P. 26(a)(2)(B). At the hearing on these Motions, it became clear that Brown has withheld the name of at least one such case because it was purportedly "confidential." Tr. of Hr'g at 41. Even if Brown has not testified in that matter, but instead simply prepared an expert report, Stein has still violated Rule 26(e)(2) by failing to supplement Brown's answers to interrogatories on the issue of his involvement in similar environmental cases. As the Court has already remedied this failure by ordering additional discovery and directing Stein to pay the Defendants' costs associated with a related Motion to Compel, the Court will not discuss this violation further.

[*13]

Whether Brown may testify concerning opinions expressed for the first time in his Affidavit, however, is another matter. The Affidavit was filed after the date set for the serving of expert reports. The Affidavit therefore does not qualify as an original expert report that could have been served in accordance with the Court's Scheduling Order. Nor could Stein have filed the Affidavit later than that time under Rule 26(a)(2)(c), which allows later filing for reports that are offered "solely to contradict or rebut evidence on the same subject matter identified" by the Defendants. See Fed. R. Civ. P. 26 (a)(2)(C). This provision would have allowed Stein to present new theories or opinions at a later date. Stein has not argued that he offered Brown's Affidavit as a rebuttal opinion. Indeed, that argument is unavailable to Stein, as it would be internally inconsistent with his only argument thus far, namely that the Affidavit does not

offer new opinions, but rather clarifies opinions already contained in the Expert Report.

Because the Affidavit cannot be considered an original expert report, the question therefore becomes whether it is an effective supplement to Brown's Expert Report. [*14] Despite Rule 26's requirement that [HN11] expert reports provide a "complete statement of all opinions to be expressed," the Rule also allows parties to supplement the opinions expressed in their experts' reports, so long as such changes are made in accordance with the Rule. See Fed. R. Civ. P. 26(e)(1). n2 The Court finds that Brown's Affidavit was not filed in accordance with Rule 26.

n2 Interestingly, [HN12] Rule 26 requires that expert reports contain "a complete statement of all opinions to be expressed" and "the data or other information considered by the witness in forming the opinions," while it only provides for the supplementation of "information" contained in an expert report. Fed. R. Civ. P. 26(a)(2)(B), (e)(1). When read in conjunction, these provisions might lead one to believe that the Rule allows only for the supplementation of information on which opinions are based, but not the opinions themselves. The Advisory Committee Notes state, however, that the Rule's duty to supplement "requires disclosure of any material changes made in the opinions of an expert from whom a report is required . . . ." Fed. R. Civ. P. 26 advisory committee's note (1993); see also Fed. R. Civ. P. 26(a)(2)(c) (providing for supplementation of all Rule 26(a)(2) "disclosures," not just "information" as stated in Rule 26(e)(1)).

[*15]

First, [HN13] supplementation of expert reports "shall be disclosed by the time the parties disclosures under Rule 26(a)(3) are due." Id. Disclosures pursuant to Rule 26(a)(3) shall be made, unless otherwise directed by the court, at least thirty days before trial. Id. (a)(3). Given that Stein's Pretrial Memorandum was to be filed with the Court on February 12, 2001, Brown's Affidavit, which Stein filed on April 6, was not timely filed as a supplement to his Expert Report. Moreover, even if the Affidavit had been timely served, n3 Stein would be unable to afford himself of Rule 26(e)(1), as he has argued throughout these proceedings that the Affidavit

Page 7

does not contradict Brown's Expert Report in any material respect. See id. (e)(1) (allowing supplementation of information in expert reports that is "incomplete or incorrect").

> n3 Were it not for the fact that the Court set a date for pretrial disclosures, Stein would have been permitted to supplement Brown's Expert Report until thirty days before the instant case was to be called to trial. Id. (a)(3). By Order of March 22, the case's trial pool date was postponed until May 6, 2001. Brown's Affidavit, filed on April 6, would therefore have been filed, albeit fortuitously, as on the last permissible day.

[*16]

Second, Brown's Affidavit violates Rule 26 because Brown played no apparent role in preparing it. [HN14] Rule 26 requires that expert reports be "prepared and signed by the witness . . . ." Id. (a)(2)(B). The Advisory Committee Notes to Rule 26 state that the Rule "does not preclude counsel from providing assistance to experts in preparing the reports . . . ." Fed. R. Civ. P. 26 advisory committee's notes (1993). Nevertheless, Rule 26(a)(2)(B) "does not contemplate blanket adoption of reports prepared by counsel or others . . . ." 6 James Wm. Moore et al., Moore's Federal Practice P 26.23[4] (3d ed. 2000). In the instant case, Stein's counsel provided more than assistance in preparing Brown's Affidavit. Indeed, at the hearing on this matter, Brown conceded that Stein's counsel, not he, prepared the Affidavit. Tr. of Hr'g at 76. Brown never claimed to have played any substantial role in its preparation, other than signing it. Although Brown implicitly referred to the existence of a second draft of the Affidavit, he gave no testimony regarding the extent of his involvement in the preparation of that draft. Moreover, the Affidavit was only filed in response to the Defendants' Motion for [*17] Partial Summary Judgment, and would not have been filed otherwise. While the language of the Affidavit explicitly mirrors the language of the federal statutes implicated in this case, Brown repeatedly testified that he was unfamiliar with the applicable legal standards under those statutes. See, e.g., id. at 45. Finally, Stein, although afforded ample opportunity to do so, offered no evidence that Brown prepared the Affidavit in any meaningful way. Accordingly, the Court finds that Brown's Affidavit violates Rule 26.

## 2. The Appropriate Remedy Under Rule 37

The Court has discretion in selecting the appropriate sanction for violations of Rule 26. [HN15] In order to preclude a party from presenting evidence, however, the Third Circuit requires that the offending party must have: (1) revealed previously undisclosed evidence when trial was either imminent or in progress; or (2) acted in bad faith, which is more than a mere lack of diligence. See, e.g., In re Paoli, 35 F.3d at 793; In re TMI Litig., 922 F. Supp. at 1004. The Court finds that preclusion of this evidence is appropriate because the Affidavit was filed in bad faith and the Defendants [*18] have been prejudiced by its late filing. n4

> n4 Although the Affidavit was filed after this case was placed in the trial pool, the Court had yet to rule on two still-pending Cross-Motions for Partial Summary Judgment. Accordingly, Stein did not file the Affidavit when trial was imminent.

In essence, Stein would have the Court allow him to file preliminary expert reports and then freely supplement them with information and opinions that should have been disclosed in the initial report. That result would effectively circumvent the requirement for the disclosure of a timely and complete expert report. See, e.g., Keener v. United States, 181 F.R.D. 639, 642 (D. Mont. 1998). The concept of preliminary expert reports is contrary to the policies underlying Rule 26. See In re TMI Litig., 922 F. Supp. 997, 1005 n.9; Smith v. State Farm Fire & Cas. Co., 164 F.R.D. 49, 53-54 (S.D. W. Va. 1995). Allowing preliminary expert reports as a matter of course would afford litigants [*19] an opportunity to "mold their expert reports to meet [their opponent's] legal challenges." In re TMI Litig., 922 F. Supp. at 1005 n.10. Such was the case here. Brown's Affidavit was only filed in response to the Defendants' Motion for Partial Summary Judgment, and was carefully tailored, by Stein's counsel, to dovetail with the statutory requirements the Defendants claimed Stein had failed to prove.

Although given the chance to do so, Stein offered no persuasive justification for the filing of Brown's Affidavit. Moreover, as is discussed at fuller length below, the opinions expressed in the Affidavit contradict those expressed in Brown's Expert Report. Finally, instead of supplementing Brown's expert opinions

2001 U.S. Dist. LEXIS 12211, *19

formally through an amended or supplemented expert report, Stein filed the Affidavit as an attachment to Stein's opposition to the Defendants' Motion for Partial Summary Judgment. Those facts, coupled with Stein's other Rule 26 violations and his inability to meet Court-imposed deadlines, demonstrate bad faith. n5 Simply stated, the work of Brown and Stein's counsel exceeds a mere lack of diligence. Id.

> n5 As noted above, Brown's Expert Report, and the attempted supplement thereto, neglected to disclose certain information because it was purportedly confidential. Tr. of Hr'g at 41. Moreover, Stein filed his Pretrial Memorandum on March 8, 2001, despite the Court's unambiguous Order that it be filed no later than February 12.

[*20]

The Court finds that precluding this evidence is the most appropriate remedy for Stein's bad faith. Importantly, this ruling will not prevent all of Stein's claims from being heard by a jury; Stein may still rely on the opinions expressed by Brown in his Expert Report and, because the Defendants have only filed a Motion for Partial Summary Judgment, several of his claims will remain intact even assuming this ruling affects Stein's statutory claims. Accordingly, the Court will preclude Stein from relying on Brown's newly disclosed opinions at trial or in support of any motions filed with this Court.

2. The Defendants' Motion to Strike

Although the issue of the Defendants' Motion to Strike has largely been rendered moot by the Court's decision that Stein filed his Affidavit in bad faith, n6 the Court further finds that the Affidavit should be stricken from the record because it contradicts Brown's Expert Report, adding so many new opinions that it changes the flavor of the case from the one presented solely by Brown's Expert Report and depositions.

> n6 See [HN16] Fed. R. Civ. P. 56(g) (making filing of affidavit in bad faith sanctionable act that justifies holding party or attorney in contempt). The Court notes that the Defendants have not asked the Court to impose these particular sanctions.

[*21]

In his Expert Report, Brown offered, among other opinions, an expert opinion that parrafin oil on Stein's property constituted a release or threatened release that substantially endangered human health or the environment. Nowhere does Brown's Expert Report mention the existence of a release or threatened release of vinyl chloride as an area of concern. The Defendants, based on Brown's Expert Report and deposition testimony, n7 could not have been on notice that Stein planned to base their liability on the existence, or threatened existence, of vinyl chloride. By contrast, Brown's Affidavit, which was filed after the Defendants filed their Motion for Partial Summary Judgment, offers many opinions concerning the presence of vinyl chloride and its associated health risks. Specifically, Brown's Affidavit opines that: (1) there has been a release or threatened release of vinyl chloride on Stein's property; (2) the release constituted "an actual and significant threat to human health and the environment"; (3) the Defendants caused the release; and (4) certain monitoring and investigative activities on Stein's property were necessary to address the release and threatened release of hazardous [*22] substances including, ostensibly, vinyl chloride. See Brown Aff. PP 7-9, 13, 24-25. None of these opinions appeared explicitly in Brown's Expert Report. n8

> n7 For example, at his deposition, Brown stated that Stein's environmental investigations had not complied with CERCLA requirements because "the National Contingency Plan in something that deals with releases. When you investigate things and there isn't anything there by definition there isn't a release or threatened release . . . . This is not a federal . . . context like that." Brown Dep. at 239.

> n8 While Brown's Expert Report stated that the nature and cost of the work on Stein's property were reasonable, Brown Expert Report at 13, it did not opine that such work was necessary in response to a release or threatened release of vinyl chloride.

Of course, Brown's Expert Report does refer to Sadat's Site Characterization Report, which mentions the

Page 9

2001 U.S. Dist. LEXIS 12211, *22

existence of vinyl chloride on Stein's property. But Brown's Expert Report did not refer to that particular [*23] finding by Sadat, much less adopt it or vouch for its credibility. Indeed, Sadat's Site Characterization Report is twenty-eight pages long; simply referring to the document in its entirety could not have put the Defendants on notice that Brown intended to express that particular opinion at trial. The filing of Brown's Affidavit altered the nature of these proceedings in a way that the Defendants, based on Brown's Expert Report and deposition, could not have anticipated. While the Affidavit may not conflict with Sadat's Site Characterization Report, it certainly conflicts with Brown's Expert Report. Brown never adopted Sadat's findings, and the mere mentioning of Sadat's Site Characterization Report as a reference document does not allow Brown, at this late juncture, to materially alter his intended expert testimony at trial.

Brown's Affidavit contradicts his Expert Report and deposition, and does not explain the contradiction in terms of a mistake in Brown's reducing his Expert Report to writing. Allowing Stein to file this contradictory Affidavit would allow him to undermine the purpose of motions for summary judgment. The Court will therefore strike the Affidavit from the record [*24] in this case. See Hackman, 932 F.2d at 241; Pellegrino, 16 F. Supp. 2d at 583.

### ORDER

**AND NOW**, this        day of August, 2001, in consideration of the Motion In Limine To Preclude Expert Opinions Not Expressed in the November 30, 2000 Expert Report of Gary Brown, filed by the Defendants, Foamex International, Inc., Foamex L.P.,

Foamex Carpet Cushion, Inc., Trace International Holdings, Inc., General Felt Industries, Inc., GFI-Foamex and Marshall S. Cogan (collectively referred to as the "Defendants") (Doc. No. 29), the Response of the Plaintiff, Charles D. Stein ("Stein"), and the Reply thereto, and in consideration of the Defendants' Motion to Strike the April 4, 2001 Affidavit of Gary Brown (Doc. No. 27), the Response of Stein and the Reply of the Defendants, as well as arguments and evidence presented at a Hearing held before this Court on July 18, 2001, it is **ORDERED** that:

1. The Defendants' Motion to Preclude is **GRANTED**. Stein is precluded from presenting expert testimony regarding matters or opinions not specifically and expressly contained in Brown's Expert Report, and from relying on such matters or opinions [*25] in support or defense of any motion before this Court.

2. The Defendants' Motion to Strike is **GRANTED**. The Affidavit of Gary Brown, filed as an attachment to Stein's Brief in Opposition to the Defendants' Motion for Partial Summary Judgment, shall be stricken from the record of this case.

3. Stein and the Defendants may, no later than fifteen (15) days after the date of this Order, submit a memorandum to the Court explaining the party's position on the effects of this Order on the Cross-Motions for Partial Summary Judgment still pending before this Court.

BY THE COURT:

JAMES McGIRR KELLY, J.